# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 18-428V
(Not to be published)

```
* * * * * * * * * * * * * * * * * * * * * * * *
RICHARD CHESTER,                    *
                                    *        Special Master Corcoran
                                    *
                                    *        Filed: September 5, 2019
                   Petitioner,      *
      v.                            *
                                    *        Attorney's Fees and Costs;
SECRETARY OF HEALTH                 *        Reasonable Basis; Peripheral
AND HUMAN SERVICES,                 *        Polyneuropathy.
                                    *
                   Respondent.      *
                                    *
* * * * * * * * * * * * * * * * * * * * * * * *
```

*Shealene Mancuso*, Muller Brazil, LLP, Dresher, PA, for Petitioner.

*Voris Johnson, Jr.*, U.S. Dep't of Justice, Washington, DC, for Respondent.

### DECISION AWARDING ATTORNEY'S FEES AND COSTS[1]

On March 22, 2018, Richard Chester filed a Petition seeking compensation under the National Vaccine Injury Compensation Program ("Vaccine Program").[2] Petitioner alleged that he developed peripheral polyneuropathy and subsequent complications after receiving the influenza ("flu") vaccine on October 18, 2016. Pet. at 1 (ECF No. 1). Unable to secure expert support for his

---

[1] Although this Decision has been formally designated "not to be published," it will nevertheless be posted on the Court of Federal Claims's website in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012)). **This means that the Decision will be available to anyone with access to the internet.** As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public in its current form. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended, 42 U.S.C. §§ 300aa-10 through 34 (2012) [hereinafter "Vaccine Act" or "the Act"]. Individual section references hereafter will be to § 300aa of the Act.

claim, Mr. Chester filed a Motion seeking dismissal of the Petition the following year, on April 1, 2019, and I subsequently dismissed the action. Decision, dated April 1, 2019 (ECF No. 16).

On May 17, 2019, Petitioner filed a motion seeking a final award of attorney's fees and costs. Mot. for Final Att'ys' Fees and Costs (ECF No. 20) ("Mot."). Mr. Chester initially requested $10,151.53 in attorney's fees, though that amount increased to $12,426.53 to account for fees recently incurred in the briefing of the present motion. Mot. at 3; Pet'r's Reply at 11, filed May 29, 2019 (ECF No. 22) ("Reply"). As the invoice attached to the Fees Motion demonstrates, two attorneys (primary counsel Ms. Mancuso and managing partner of the Muller Brazil firm, Mr. Paul Brazil) worked on the matter between late-March 2017 and the present date, as well as eight legal assistants. Ex. A to Mot. at 1–6. Petitioner also requests costs in the total sum of $1,151.83, reflecting filing fees and the work of a single expert who consulted on the matter. Ex. B to Mot. at 1.

Respondent filed an opposition to the Fees Motion on May 22, 2019. Opposition (ECF No. 21) ("Opp."). Respondent maintains that the case lacks reasonable basis, emphasizing that Petitioner's claim was not supported by independent and objective factual evidence (and in so arguing, points out that Petitioner's counsel filed the Petition without fully vetting its evidentiary basis). Opp. at 8–9. On May 29, 2019, Petitioner submitted a reply contesting Respondent's arguments. Reply (ECF No. 22).

Now, having had the opportunity to review all filings in light of the medical record, I hereby (and for the reasons set forth below) GRANT Petitioner's motion.

## I.     Brief Factual Summary

Mr. Chester was born on June 23, 1962. Ex. 2 at 1. Prior to vaccination, his medical history was significant for urolithiasis, restless leg syndrome ("RLS"), hypothyroidism, dyslipidemia, Peyronie's disease, three procedures for removing kidney stones, laparoscopic cholecystectomy, chronic insomnia, and obstructive sleep apnea. *See, e.g.*, Ex. 5 at 41; Ex. 11 at 4–5. On August 22, 2016, Petitioner presented to his primary care physician, Dr. John G. Nemeck, M.D., and reported that he had not experienced numbness or tingling in any part of his body at any time in the past year. Ex. 5 at p. 46.

On October 18, 2016, Petitioner received the flu vaccine. Ex. 2 at 1. Less than two weeks later, on October 28, 2016, Petitioner returned to Dr. Nemeck, now complaining of a "several month history of total body numbness." Ex. 5 at 64. Petitioner, however, has maintained that such symptoms actually began within one week of vaccination. *See* Reply at 5; Ex. 2 at 6; Ex. 5 at 46. Petitioner was tested for Lyme disease and was found to be negative. Ex. 5 at 64.

On October 31, 2016, Mr. Chester contacted Marshfield Clinic and complained that the numbness he was experiencing was "literally everywhere and quite uncomfortable in my face, hand and arms especially." Ex. 5 at 69. On November 2, 2016, Dr. Nemeck, responding to Mr. Chester's correspondence, indicated that he was unsure what was causing Petitioner's numbness, but recommended he stop taking Lunesta for his insomnia. *Id.* at 68–69.

On November 21, 2016, Petitioner presented to Nurse Practitioner ("NP") Marcy M. Davies to be evaluated for possible Guillian-Barré syndrome. Ex. 3 at 21. During this visit, Petitioner complained of "numbness in bilateral arms and legs, headaches 'all over his head' which asre [sic] described as dull, numb, and achy in quality, tremors that are intermittent, weakness in his hands, hypersensitivity to touch and to soun[d]…vertiogo [sic]…and discomfort with breathing. He reports that with expansion during inhalation, the air feels particularly cold and it causes him discomfort. Patient states that he also notes swelling in his lymph nodes in his neck bilaterally." *Id.* Petitioner explained that his symptoms started one week after receiving the flu vaccine. *Id.* Petitioner was diagnosed with neuropathy of bilateral upper and lower extremities, though NP Davies noted that the etiology of Petitioner's symptoms was unclear. *Id.* at 23, 25.

Petitioner underwent a lumbar puncture on December 5, 2016 at Sacred Heart – Saint Mary's Hospital. Ex. 4 at 4. The results of the lumbar puncture showed elevated T-protein. Ex. 2 at 2–4; Ex. 3 at 12. Petitioner was subsequently scheduled for an electromyography nerve conduction test ("EMG/NCT") and was advised to "start gabapentin 300 mg capsules after EMG/NCT." Ex. 3 at 10.

On January 25, 2017, Petitioner underwent an NCT and needle EMG. Ex. 6 at 1–4. Following these tests, Dr. Ellen L. Parris, M.D. noted that the "study did not reveal evidence for a local entrapment neuropathy involving any of the nerve pathways sampled." *Id.* at 2. Regarding the NCT, she noted that it "did not reveal what might be typically seen in an acute demyelinating polyneuropathy such as Guillain-Barre syndrome" and that it "did not pick up evidence for a multifocal polyneuropathy and there is [sic] no abnormalities in terms of the motor pathways sampled." *Id.* at 2–3. Dr. Parris further noted that the EMG "was also normal and did not suggest residuals related to the peripheral nerve pathways process, nor a more proximal process." *Id.* at 3. Dr. Parris explained, however, that "because of very minimal large fiber findings today (the sural nerve), the question of whether there is a small fiber neuropathy responsible for the painful sensory symptoms that he has is certainly raised and reasonable to consider…Small fiber involvement could be the sole feature of an acute or chronic immune neuropathy, although this has been uncommon, but it is reported…[T]he sensory symptoms that he does report, which are also painful, correlate for small fiber neuropathy." *Id.* at 3–4. Petitioner was advised to take gabapentin for his increasing nerve pain. Ex. 6 at 3.

On February 8, 2017, Petitioner saw NP Davies for a follow-up appointment, during which Petitioner complained of persistent numbness and pins and needle-type pain bilaterally in his arms and legs, intermittent tremors, hypersensitivity to touch and to sound, and weakness in his hands

since receipt of the flu vaccine. Ex. 3 at 4. NP Davies noted that "Dr. Parris did not feel that the findings on the nerve conduction portion of the study revealed what might be typically seen in an acute demyelinating polyneuropathy such as Guillain-Barré syndrome." Ex. 3 at 7. Despite these conclusions, Petitioner was assessed and treated for neuropathy of bilateral upper and lower extremities. Ex. 3 at 6. NP Davies agreed with Petitioner that he should not receive the flu vaccine in the future and advised Petitioner to continue taking gabapentin. Ex. 3 at 7.

On November 22, 2017, Petitioner presented to Dr. Nemeck with complaints of ongoing numbness since receiving the flu vaccine approximately one year prior. Ex. 9 at 9–14. During this visit, Petitioner stated that his symptoms had some improvement with gabapentin, but he continued to experience numbness. *Id.* at 10. Petitioner was advised to continue taking his medication. *Id.* at 13.

On May 2, 2018, Petitioner returned to NP Davies and indicated that his symptoms had not improved since his last visit eight months earlier and that he was now experiencing short-term memory issues. Ex. 13 at 8. He was assessed for peripheral neuropathic pain, poor short-term memory, RLS, and insomnia. *Id.* Petitioner's gabapentin dosage was increased, and he was instructed to return for a follow-up appointment in six months. *Id.* at 8–9.

## II. Analysis

### A. *Reasonable Basis Standard*

I have in prior decisions set forth at length the criteria to be applied when determining if a claim possessed "reasonable basis" sufficient for a fees award. *See, e.g.*, *Allicock v. Sec'y of Health & Human Servs.*, No. 15-485V, 2016 WL 3571906, at *4–5 (Fed. Cl. Spec. Mstr. May 26, 2016), *aff'd on other grounds*, 128 Fed. Cl. 724 (2016); *Gonzalez v. Sec'y of Health & Human Servs.*, No. 14-1072V, 2015 WL 10435023, at *5–6 (Fed. Cl. Spec. Mstr. Nov. 10, 2015). In short, a petitioner can receive a fees award even if his claim fails, but to do so he must demonstrate the claim's reasonable basis through some objective evidentiary showing and in light of the "totality of the circumstances," including all facts relevant to the case. *See Chuisano v. Sec'y of Health & Human Servs.*, 116 Fed. Cl. 276, 286 (2014) (citing *McKellar v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 303, 303 (2011)). The standard for reasonable basis is lesser than the preponderant standard applied when assessing entitlement, as cases with reasonable basis (because they have objective proof supporting the claim) can nevertheless still fail to establish causation-in-fact. *Braun v. Sec'y of Health & Human Servs.*, __Fed. Cl.__, 2019 WL 3228040, at *4 (2019).

The Court of Federal Claims recently provided further illumination as to the standards to be used in evaluating whether the totality of the circumstances warrants a finding of reasonable basis. *Cottingham v. Sec'y of Health & Human Servs.*, 134 Fed. Cl. 567, 578 (2017), *appeal docketed*, No. 19-1596 (Fed. Cir. Feb. 26, 2019). As Judge Williams therein stated, a special master

4

should consider "the novelty of the vaccine, scientific understanding of the vaccine and its potential consequences, the availability of experts and medical literature, and the time frame counsel has to investigate and prepare the claim." *Cottingham*, 134 Fed. Cl. at 574. The existence of an impending statute of limitations deadline, however, has been removed from consideration under the "totality of the circumstances" analysis, as it does not constitute an objective factor relevant to the claim's underlying validity. *Simmons v. Sec'y of Health & Human Servs.*, 875 F.3d 632, 636 (Fed. Cir. 2017); *see also Amankwaa v. Sec'y of Health & Human Servs.*, 138 Fed. Cl. 282, 289–90 (2018) ("special masters must not consider subjective factors in determining whether a claim has reasonable basis[,]" and should "limit [their] review to the claim alleged in the petition . . . based on the materials submitted") (quoting *Santacroce v. Sec'y of Health & Human Servs.*, No. 15-555V, 2018 WL 405121, at *7 (Fed. Cl. Spec. Mstr. Jan. 5, 2018)).

Despite the fact that an attorney may no longer point to the need to file before a looming statute of limitations cutoff date to justify acting on an otherwise objectively baseless claim, the nature and extent of an attorney's investigation into the claim's underpinnings, both before and after filing, can help illuminate what a claim's basis is (even if the attorney's conduct does not establish the *claim's* objective validity by itself). *See Cortez v. Sec'y of Health & Human Servs.*, No. 09-176V, 2014 WL 1604002, at *6 (Fed. Cl. Spec. Mstr. Mar. 26, 2014); *Di Roma v. Sec'y of Health & Human Servs.*, No. 90–3277V, 1993 WL 496981, at *2 (Fed. Cl. Spec. Mstr. Nov. 18, 1993) (citing *Lamb v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 255, 258–59 (1991)). Program attorneys are expected to conduct a reasonable pre-filing investigation—including an evaluation of the factual basis for the claim. *See Allicock*, 2016 WL 3571906, at *4; *Turner v. Sec'y of Health & Human Servs.*, No. 99-544V, 2007 WL 4410030, at *7 (Fed. Cl. Spec. Mstr. Nov. 30, 2007) ("[a] reasonable pre-filing inquiry involves an investigation of the factual basis for a Program claim or the medical support for a vaccine petition") (emphasis added)). If an attorney has proceeded with a Vaccine Act claim without, for example, engaging in an adequate record review (where those records would reveal a patent weakness), that failure is reasonably charged to the attorney.[3]

    B.    *Petitioner's Claim Possessed Reasonable Basis up to Dismissal*

Respondent's opposition to a fees award in this case has several components. He stresses the fact that in *Simmons*, the Federal Circuit clarified that the reasonable basis inquiry focuses on the claim, not the attorney's good-faith efforts to prosecute it. Opp. at 8. He then maintains that none of Petitioner's treating physicians expressed the opinion Petitioner's condition was caused by the flu vaccine. Opp. at 9. Respondent also emphasizes that the medical records indicate that Petitioner was experiencing neurological symptoms several months *prior* to receiving the flu

---

[3] By contrast, if an attorney only possesses *some* of the medical records, and has otherwise been diligent in their review, the fact that a record item obtained *later* reveals that the claim should not be pursued would not retroactively taint the entire case. This is wholly consistent with the fact that cases can be filed with reasonable basis but lose it later on, as evidence bearing on a claim's objective basis is obtained. *McNett v. Sec'y of Health & Human Servs.*, No. 99-684V, 2011 WL 760314, at *6 (Fed. Cl. Spec. Mstr. Feb. 4, 2011).

vaccine, and that those symptoms were attributed to the medications Petitioner was taking to treat those symptoms. Opp. at 9 (citing Ex. 5 at 64; Ex. 3 at 43–54; Ex. 11 at 2).

Petitioner argues in response that the claim possessed reasonable basis throughout its existence, emphasizing that "[a] case may have a reasonable basis initially, but lose that reasonable basis as the case proceeds." Reply at 8 (citing *Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (Fed. Cl. 1992)). To support this proposition, Petitioner notes that he was not diagnosed with peripheral neuropathy (the alleged injury) until November 21, 2016, more than one month after receiving the flu vaccine, and describes his post-vaccination symptoms. Reply at 4 (citing Ex. 5 at 11–13, 18–20, 22, 26, 41.) He also maintains that with the exception of one record, the medical records support a finding that Petitioner's symptoms began after receiving the flu vaccine. Reply at 5. *But see* Ex. 5 at 64 (describing a "several month history of total body numbness" prior to receiving the flu vaccine). Additionally, Petitioner references prior decisions in which petitioners established reasonable basis for vaccine injury claims in the absence of medical records documenting statements made by treating physician supporting causation. Reply at 8 (citing *Chuisano v. United States*, 116 Fed. Cl. 276, 288 (Fed. Cl. 2014); *McKellar v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 297, 303 (2011); *Dews v. Sec'y of Health & Human Servs.*, No. 13-569V, 2015 WL 1779148 (Fed. Cl. Spec. Mstr. Mar. 30, 2015); *Garrett v. Sec'y of Health & Human Servs.*, No. 14-16V, 2014 WL 6237632, at *3–4 (Fed. Cl. Spec. Mstr. Oct. 27, 2014); *Woods v. Sec'y of Health & Human Servs.*, No. 10-337V, 2012 WL 4010485, at *7 (Fed. Cl. Spec. Mstr. August 23, 2012)).

There is no dispute that this claim did not have sufficient evidentiary basis to *proceed*— that very proposition was the grounds for Petitioner's decision to request dismissal. Although in some cases a claimant can establish causation simply based on records, past decisions, and medical or scientific literature, in this case Petitioner required a persuasive and competent expert—both to explain how the flu vaccine could cause an unspecified neuropathy, but also (under the second, "did cause" prong of the test set forth in *Althen v. Sec'y of Health & Human Servs.*, 418 F.3d 1274 (Fed. Cir. 2005) to establish that his injury was attributable to the vaccine rather than something else in his medical history. Because he could not obtain such evidentiary support, his claim could not viably proceed. In effect, the determination that a critical component of evidence could not be supplied deprived the case of reasonable basis at the moment of that determination, since I would be unable to rule in Petitioner's favor without it.The real issue posed by the present fees motion is whether Petitioner could have reached the same conclusion *far sooner*—perhaps even before the claim was filed—and thereby not incurred the nearly $12,500 in attorney's fees that his counsel now seeks to recover.

So—was there enough objective evidence *in this case* to find that Mr. Chester's claim had reasonable basis, before the necessity of an expert opinion became apparent? I find there was. Not only is there no dispute that Petitioner received the flu vaccine, but there is record support for the claimed injury. *See, e.g.*, Ex. 3 at 12, 20–25; Ex. 2 at 2–4, 11–14; Ex. 6 at 3–4. In addition, the timeframe between when Petitioner received the flu vaccine on October 18, 2016 and when he

first reported his neurological symptoms to a treater on October 28, 2016 is not so short to be medically unreasonable on its face. In addition, although an initial, post-vaccination record does suggest onset prior to vaccination, the overall record does not *dispositively* establish that Petitioner consistently reported this to treaters (and that record would not prohibit a significant aggravation claim in any event).

Furthermore, the claim asserted herein is not novel, but is consistent with many other claims adjudicated previously. A brief overview of special master decisions reveals many cases in which peripheral neuropathy is alleged among other neurologic symptoms and conditions. *See, e.g.*, *DeGrandchamp v. Sec'y of Health & Human Servs.*, No. 01-413V, 2003 WL 21439670 (Fed. Cl. Spec. Mstr. May 15, 2003); *Zimmerman v. Sec'y of Health & Human Servs.*, No. 13-447V, 2014 WL 4384672 (Fed. Cl. Spec. Mstr. Aug. 13, 2014); *Fennell v. Sec'y of Health & Human Servs.*, No. 16-413V, 2017 WL 3623969 (Fed. Cl. Spec. Mstr. Jul. 18, 2017). Accordingly, the general concept that the flu vaccine could cause peripheral neuropathy is not properly rejected out of hand (in contrast, for example, to well-litigated claims arguing that autism is vaccine-caused). Although prior decisions do not control the outcome herein, the fact that similar claims have been alleged, and found success, underscores the kind of objective proof that can support a reasonable basis finding.

Admittedly, the record in this case augured an unsuccessful result. There are medical records pre-dating Petitioner's vaccination in which Petitioner complains of having RLS symptoms in his legs and arms. Ex. 3 at 43; Ex. 11 at 2. Additionally, extensive neurological evaluation "did not reveal what might be typically seen in an acute demyelinating polyneuropathy such as Guillain-Barre syndrome" or "pick up evidence for a multifocal polyneuropathy," with no treaters linking vaccination to these symptoms. Ex. 6 at 2–3; Ex. 7 at 1. Such points confirm why the Petition was appropriately dismissed, once Mr. Chester could not locate an expert willing to opine in his favor. But all of the above simply goes to the claim's *strength*, as opposed to whether it had any *objective basis* for proceeding. Reasonable basis is not a function of whether a claim is likely to succeed. *Di Roma*, 1993 WL 496981, at *1. It is thus appropriate to allow a fees award in this case.[4]

C.      *Calculation of Petitioner's Fees and Costs Award*

Having determined that a fees award is appropriate herein even though the claim was not successful, I must now evaluate what a reasonable award would be. *Avera v. Sec'y of Health &*

---

[4] Despite my reasonable basis finding herein, I take note that the attorney invoices in this case reveal that counsel had possession of the matter for a *year* before it was filed, and was thus under no pressure of a looming limitations cut-off to act—giving counsel sufficient time to investigate the claim. Although in this particular matter I do not find that the case's reasonable basis could have been conclusively determined in that pre-filing timeframe such that counsel should have decided not to pursue the matter, in a case where record proof more obviously undercut the claim, a counsel's failure to take advantage of such a pre-filing timeframe could bulwark a determination that reasonable basis did not exist.

*Human Servs.*, 515 F.3d 1343, 1347–48 (Fed. Cir. 2008); Section 15(e)(1)(B). I find that the rates requested by the attorneys herein are consistent with what they have received in other Program cases (based upon the Office of Special Masters's rate schedule for in-forum attorneys).[5] *See, e.g.*, *Prestia v. Sec'y of Health & Human Servs.*, No. 17-013, 2019 WL 2158835, at \*2–3 (Fed. Cl. Spec. Mstr. Apr. 25, 2019); *Kodimer v. Sec'y of Health & Human Servs.*, No. 17-140, 2019 WL 3074015, at \*2 (Fed. Cl. Spec. Mstr. Jun. 17, 2019). Additionally, the work performed on this matter was reasonable. I therefore award in full the requested attorney's fees. I also find that the costs requested for fees associated with filing the Petition, consulting an expert, and copying medical records are reasonable.

Accordingly, I hereby award final attorney's fees and costs in the total sum of $12,426.53, in a check payable to Petitioner and Shealene P. Mancuso, Esq. In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court **SHALL ENTER JUDGMENT** in accordance with the terms of this decision.[6]

**IT IS SO ORDERED.**

s/ Brian H. Corcoran
Brian H. Corcoran
Special Master

---

[5] The in-forum hourly rate fees schedules are available at http://www.uscfc.uscourts.gov/node/2914.

[6] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.